Case 17-5492, USA v. David Givhan Argument not to exceed 15 minutes per side. Mr. Rossman, you may proceed for the appellant. Good morning. May it please the Court, my name is Travis Rossman and I represent appellant David Givhan. I would like to reserve three minutes for rebuttal. The first issue I would like to discuss today is the Confrontation Clause issue. David Givhan's constitutional right to confront and cross-examine the witnesses against him concerning their motive or bias trumped any interest that those witnesses may have had under Rule 412 or any other protection concerning their sexual character and reputation. There is ample precedent that the Confrontation Clause right trumps that interest. There are some cases cited in the brief, the Olden case and the Lewis case most notably, where the courts have found that that right to confront about the particular attack referenced in Davis trumps any protections from the rules of evidence. Rule 412 itself recognizes that constitutional interests may trump the other interests of Rule 412. Rule 412C states that constitutional protections may require admission of evidence that would otherwise be barred. In this case, the credibility, motive and bias of the witnesses was critical. You had three witnesses with very big credibility problems. Christine essentially committed the same crime that David Givhan was charged with when she transported Shakela and Interstate Commerce to Fort Wayne for the purposes of prostitution. She initially denied making a deal to get David Givhan, but later admitted it, and she denied committing a crime in Fort Wayne. Shakela was a convicted felon. She could not identify David Givhan in the courtroom. She stated that she was not afraid of him, and she admitted that he bought her a bus ticket to go back home when she wanted to leave. Zia was probably the most problematic. She recanted most of her testimony during the trial after the government had opened with a lot of damning facts that she had given the government. She admitted that she had an alcohol and Xanax problem and had a foggy memory, and she was on probation for a misdemeanor criminal mischief charge for vandalizing her boyfriend's car. Against this background, we have the testimony about what happened in Fort Wayne. The district court limited Mr. Givhan from exploring the fact that that conduct was for prostitution. But the evidence in the case that came in clearly showed that these women had agreed to testify against Givhan, and one had agreed to get him in order to have the charges against them dismissed. Why do you have to have in the record that it was prostitution that they were charged with? It shows their motive or bias. It shows why they agreed to testify against him that day. I guess I'm confused. I might have the same question as Judge Stranch. You know that they made a deal with the government, right? And you were allowed to solicit that testimony at trial. And it could be that they were lying because they wanted to curry favor with the government. Why do you need to show what the charge was that was dropped? Because it makes them look more like victims. The fact that they were arrested for prostitution that day makes them look more like victims and less like criminals. They can say, we're here doing this today because David Givhan put us in this lifestyle. He made us go out and prostitute. He put us in this lifestyle. Isn't what you're arguing at odds with the rule against propensity evidence? Why isn't this propensity evidence? This is what these women are. The jury needs to know what these women are. And then they can assume the propriety of their testimony based on what they are. It's not propensity evidence. We're not saying don't believe them because they're not prostitutes. That's not what we're saying. We're saying don't believe them because it goes to their motive or bias to testify against him. Why wouldn't they have the same motive to testify against him if they had murdered somebody and the police were going to let them off? Or if they had engaged in the sale of a substantial quantity of drugs? Well, to take that example, there would have been no argument to be made that David Givhan turned them into murderers. No argument that he turned them into thieves or anything else. By saying we were forced into prostitution, we were forced into this lifestyle by this man, he made us do this, they're making themselves look like victims. They're much more sympathetic to the police. They're much less likely to be charged. And the police look at them and say, okay, well, instead of looking at you as a criminal, we look at you as a victim. And as long as you cooperate... Is that their history in the record? Is it Zia? I think that's how her name's put. I know that the opening included a lot of information, but she didn't just go away. She was put on the stand. And she had to say, you know what, that was my prior pimp. So why isn't there already evidence in the record that the women had engaged in prostitution prior to their relationship with Givhan? It wasn't as if this was a claim that he took innocent women from the hinterland and forced them into this lifestyle. The evidence showed that this had been a lifestyle in which these women had already engaged. So what good would it do to add an additional, and so they did after the fact, too? Well, Zia was not at Fort Wayne. She was not present there. And she had a lot of credibility problems. But Fort Wayne sort of corroborated what she was testifying about. But it's not so much about the past prostitution. It's about what they were doing when they agreed to cooperate to get Givhan. The completeness of that deal, the complete picture of that deal was not shown to the jury. I'm just struggling with that. How could it not? Here are women whose records and testimony show they have been prostitutes, and now they cut a new deal with a new pimp. Why isn't that an inclusive explanation for what it is you want to say about them? Because the district court excluded evidence and prohibited Givhan from listing evidence that on the day they agreed to cooperate to get him. As part of their deal, as part of their package, where they were not charged, they were arrested and then unarrested. They were given their money back. But the complete picture was that that was for prostitution, and that was part of their motive. They didn't get a forbearance because they were thieves. They didn't get a break for something else. It was because they continued to prostitute, and that was part of their motive to get him. Now, the other information was background, but that takes me to an important point. The government was able to admit other evidence of prostitution as background whenever it wanted. So they went into Zia's prior pimp. Even after she recanted, they went into evidence that the prior pimp cut her, the prior pimp burned her, all these things that really had nothing to do with Givhan. There was testimony about Christine's prostitution after her initial escape from Givhan, and before she met up with him again, again, that had nothing to do with Givhan. So the government gets in evidence of other acts of prostitution for background whenever it wants. But Givhan can't introduce evidence that the Fort Wayne incident was for prostitution to show motive or bias. And again, I think that takes us back to an unlevel playing field, and it takes us back to the particular attack in Davis. Because in Davis, they didn't just admit evidence or say that evidence should have been admitted of a generic conviction. We can cross-examine him about what his conviction was for, what he did, to show that he was trying to curry favor with the police and to blame someone else. And that's really what was going on in Fort Wayne. They were blaming someone else. And so that implicates the particular attack under Davis. I hope that answers the question. So continuing on, if the court finds there's a confrontation clause violation, there's additional analysis that has to be performed. One question is, did the jury have enough information, despite the limitation, to assess the theory of bias or improper motive? And I think this is really where the government hangs its hat. They talk about, well, the jury probably figured it out, which I think is speculative. But really, the jury had enough information to assess their bias or motive. The problem with that is that even if the jury figured it out, even if the jury knew what the complete picture of Fort Wayne was, Givhan wasn't able to explore it on cross-examination. And that really impacted their decision to cooperate and their way to slant their testimony or what they told the police that day. Because they just told the police what they wanted to hear so they could walk out and be unarrested. And that was the theory. And he just did not get to explore that sufficiently. The next question is to balance the interest in confrontation against the competing interest. And we think that Givhan had a very strong interest in confronting the witnesses concerning their motive or bias. Their testimony was critical to convict him. Without their testimony, there really wasn't much evidence at all. It was mostly circumstantial. There would have been Instagram posts and other things like that that would have been circumstantial and would not have directly proven the case. And the government essentially had no interest in protecting the sexual reputation of these witnesses. Because the government elicited graphic sexual details. There was ample testimony about anal sex, prostitution, pimping, all of these distasteful things in the record. And also the government, it takes me back to the government elicited testimony about the other acts of Zia with her pimp before. And about Christine when she was in Kalamazoo and with King David. So there really was no interest in protecting their sexual reputations because all of this came out. So I think the balancing test strongly favors Givhan. And then that brings us to harmless error. Whether any error was harmless beyond a reasonable doubt. And again, we have to consider the importance of the witness's testimony. Again, it was critical. Whether the testimony was cumulative, and it wasn't. These witnesses all had a different piece of the puzzle and for different charges. The presence or absence of corroborating or contradicting testimony. Again, there was some limited corroborating evidence about travel with the Instagram posts. But there was really not much corroborating evidence about the use of forced fraud or coercion. And that's the most important charge because it carries the 15-year mandatory minimum. We look at the extent of cross-examination otherwise permitted, and I think that I've discussed that. Again, it was not enough to show that the victims had a motive to testify against him to make themselves look more like victims and less like criminals. And then the overall strength of the government's case. Can you briefly address your sentencing argument? Absolutely. So turning to the sentencing argument, Givhan made an argument at sentencing that there was an unwarranted sentencing disparity, which is one of the 3553A factors, because black pimps are charged and prosecuted and sentenced in a much more harsh way than others. I'm more interested in the offense target, the offense conduct not being within the target of the statute. Right. So there was an argument made at sentencing that the statute was primarily enacted to prevent the trafficking of individuals from overseas, and was not primarily enacted to combat the activity for which Givhan was convicted. That was raised at sentencing and was not addressed by the judge, although on appeal we have focused more on the black pimps matter article. Thank you. I see I'm out of time. Thank you. May it please the court, Elizabeth Heger for the United States. Your honors, if it's okay, I'd like to start off with the confrontation clause issue, move on to the complete defense issue, and then briefly touch upon the sentencing issue as well. Your honors, the district court did not abuse its discretion in excluding evidence that the arrest in Fort Wayne was for prostitution for two reasons. First, the cross-examination that the district court allowed on motive was more than sufficient. I would like to point out that under Van Arstyle, which is the kind of most important Supreme Court case on this issue, that court said trial judges retain wide latitude insofar as the confrontation clause is concerned to impose reasonable limits on cross-examination, based on concerns about, among other things, prejudice and interrogation that is only marginally relevant. More specifically, this court has held that where there is a limit on cross-examination on motive, we ask whether, despite those limits, the jury still had enough information to assess the motive theory, and even if not, this court applies a balancing test weighing the violation against competing state interests. Wasn't the concern here that it was an inconsistent ruling, that Mr. Given was not able to engage in the very type of presentation of evidence that the government undertook? Your honor, that was the argument here. However, the crux of that question is the purpose that the evidence is being used for. You would have to concede that there was a distinction. There was some inconsistency in allowing the government to engage in evaluation of the sexual nature of the conduct prior to prostitution, and yet deny the defendant the opportunity to discuss the prostitution charge. Your honor, that inconsistency is built into the rule itself. Rule 412 prohibits the introduction of sexual evidence for two purposes, to show other sexual behavior and to show sexual predisposition. The United States did not introduce that evidence for either of those purposes. The United States introduced evidence of what Christine did when she prostituted one day in Kalamazoo, essentially to show how the defendant got her back. It's actually part of the coercion case. She prostituted by herself and she admitted doing that, and he was able to find her because he enlisted another pimp to go out and get her and to bring her back to him. This is evidence that the government needed to introduce to show that he wouldn't let her go. When she escaped from him, he wouldn't let her go. Certainly the United States was not trying to show any of the purposes prohibited by Rule 412. I don't want to put this evidence in for a prohibited reason. I want to put it in to show what they were doing in cutting this deal. The defense was able to show very, very clearly that the women had motive to implicate Mr. Given in this crime. They asked the women repeatedly, did you want to get Given? You wanted to implicate him so you could get out of jail? As to the defendants urging that this goes to motive, as we said, there was plenty of motive evidence in there. This court and other courts have not hesitated to exclude evidence that would otherwise violate Rule 412. Even when the defense urges that it goes to motive, when that motive evidence seems pretextual and finds no support in the record, as it does here. For instance, the district court cited United States v. Jackson. In that case, as here, the defendant urged a motive theory. They urged that the victims are really implicating the defendant in order to shift suspicion away from their other pimps. They said, that's why we want to introduce this sexual evidence, not for any purposes prohibited by Rule 412. The court here said, no, that's not a natural inference and is based entirely on speculation. The court excluded it, even though the defense urged that it went to motive. This court should do the same here. This argument that somehow the motive, which was, again, extensive motive testimony, the argument that motive was somehow enhanced because the crime was prostitution is actually new to this appellate briefing. There's no reference to this in the district court proceedings. The district court certainly did not abuse its discretion by failing to buy this argument that was never made to it. So your position is that defense counsel did not request at the trial to be able to ask to cross-examine on the charge, the prostitution charge that was the basis of the deal? He certainly did, Your Honor, but he said, again, it goes to motive. And the district court addressed that. The district court said, you may examine on motive. You may ask them many, many questions about that they had a motive to implicate Mr. Gibbon in order to have the charges against them dropped. But this is another kind of argument that he's making here. He's making the argument that even though the jury was apprised that they were able to avoid charges and get out of jail here, it wasn't enough because they didn't understand what the charges were. And somehow, I call it kind of the enhanced motive theory, somehow their motive would have been enhanced by the jury knowing that it was for prostitution. There's simply no indication that he ever made that particular argument in the district court. Certainly, the district court did not abuse its discretion by not addressing that particular argument. And again, it is like in Jackson. That argument is simply counterintuitive. It is not a natural inference, and it is based on pure speculation. And the district court did not abuse its discretion in not countenancing that argument. If I may briefly address, Your Honor, the opening point that the defense counsel made here with respect to the Constitution automatically trumping any interest, any of the 412 interests. This court has rejected that argument numerous times. This court rejected it in Boggs, in United States v. Ogden, and Gagney v. Booker. Each of those cases clearly say that we actually weigh the 412 interests against any kind of constitutional concerns. Moving on, Your Honor, even if there was a constitutional error here, the error was harmless beyond a reasonable doubt for two reasons. First of all, there was substantial corroborating evidence here. The jury saw hotel receipts, medical records, Instagram posts, and other witness testimony that corroborated the witness's testimony here. And again, the crux of this case, there was an extremely thorough cross on the women's motive to lie. Additional information that the arrest was for prostitution would not have added anything to the defense motive theory. Moving on to complete defense, the argument fails for two simple reasons. The first reason is the district court's 412 ruling was correct. This court's precedent indicates that the right to present a complete defense does not mean there is a right to offer evidence that is inadmissible under standard rules of evidence. This court held that in Blackwell and reiterated it last year in the Cox decision. Also, Winn v. Renico states that a complete defense means that any evidentiary restrictions cannot be arbitrary or disproportionate to the purpose they're designed to serve. Now that is clearly not the case here. The district court's decision on Rule 412 was correct under the law of this circuit and of other circuits. And again, this argument, the complete defense argument essentially boils down to a complaint that the defense was not permitted to elicit other acts of prostitution while the government was. But Rule 412 does not work that way. Introducing this evidence for a permissible purpose, as the government did, does not open the door to the defense introducing the evidence for an impermissible purpose. And again, even if there was a complete defense violation here, it was harmless for the same reasons as it was harmless under the Confrontation Clause. There was substantial corroborating evidence here and a very, very thorough cross on motive. If there are no questions about the Confrontation Clause issue or the complete defense issue, I can move on to briefly address sentencing. Certainly here, Your Honors, the district court did not commit plain error here. This court's decision in Al-Maliki instructs us that to be plain error, the error must be clear under current law and that a lack of binding case law will preclude a finding of plain error. Here, this court's precedent states that there is no need to address arguments that are meritless. The court's decision in Gopensky actually stands for that point, and also this court's decision in Gale specifically states that the district court not only need not, but should not address arguments that are frivolous. Now, this argument, the racial disparities argument, was frivolous for two reasons. First of all, the district court, as we've argued in our brief, was prohibited under the sentencing guidelines from basing the downward departure on race. If we look at the crack cocaine cases, we cited the Eighth Circuit's decision in Maxwell and the Fourth Circuit's decision in Bynum regarding the crack cocaine disparities. Certainly in both of those cases, the court, while agreeing that there were important policy implications here, held that it was not a reason for a downward departure. Perhaps more importantly, Your Honors, this article had absolutely very, very little to do with sentencing. It was mostly about prosecutions of pimps, disparities between prosecutions. And in any case, it had nothing to do with this defendant and these crimes. Because the argument was meritless, the district court simply had no duty to address it and did not commit plain error by doing so. What about the argument that the sentence was outside the heartland of cases such as this, because the statute was aimed at immigrants being brought into the country to see that they are not exported and for other reasons, and that this defendant doesn't fit that profile? Your Honor, we certainly did not understand the defense to be raising that issue in this case, but even so, the text of this statute applies clearly to this case. If you simply read the text of the statute, it applies to this case. This court of appeals has applied the sex trafficking statute in circumstances very similar to these, where women were being trafficked by pimps, and this falls certainly into the heartland of cases for which this statute has been applied. In any case, I don't think that this is a sentencing argument. I think that possibly in a motion to dismiss the indictment in the district court, the defendant could have raised this issue, but it certainly does not go to sentencing, which is the argument that was made in the district court. Isn't there some precedent, I'm thinking of Coon v. United States Supreme Court case in 1996, that a defendant may receive a lower sentence if his conduct falls outside the central purpose of the statute? Your Honor, that is true, but we would say that this is the central purpose of this statute. I believe that this statute has been used in these exact types of cases numerous times, and possibly even more than the international trafficking, although it's certainly been used in that case as well. Is there not a separate statutory provision for domestic trafficking? Is this the one that is used for both international, because clearly that is within the acts. Genesis is the discussion of bringing forced labor, both sex labor and other labor internationally, and often in an organized crime arena. So are there not two different statutes or two different provisions within this statute? I'm not sure, Your Honor. I think that this particular statute has been used for both international and domestic trafficking. There is another statute that actually applies to this case as well, the transportation statute, but with respect to trafficking, this statute... Across state lines. Across state lines, that's right, Your Honor. This statute has been applied both domestically and for international travel. The text of this statute, there is no doubt that the text of this statute applies, regardless of whether this is kind of an international operation. Did the court need to address that in sentencing? No, Your Honor. The court did not need to. It's not frivolous, right? Your Honor, I believe it would be frivolous because, again, the cases indicate that there is no plain error unless there is binding case law indicating the other way, and the binding case law goes absolutely the other way. Numerous courts have applied this particular statute with purely domestic cases. So I would say that even if the court did need to address it, it was not plain error to not do so because the need to address it was not clear under binding case law. Just very quickly, Your Honors, I would like to address the Davis decision that defense counsel brought up. In Davis, the court allowed in the fact that the defendant in that case was facing burglary charges, but the court did so because motive evidence simply could not get in any other way. The defendant in that case was absolutely precluded in introducing any evidence of his motive theory in that case, and that is the reason that that evidence had to come in in that case. Here, as Your Honors have pointed out, there was abundant evidence of motive introduced. Again, the district court allowed testimony that made very clear that the women had a motive to implicate Mr. Gibbon in order to avoid charges. So that is why this case is an opposite here. And his arguments on bias fit within your same analysis of motive? That's correct, Your Honor. If there are no more questions, we would just ask the court to affirm the conviction and sentence. Thank you. Thank you very much. Any rebuttal? Thank you. I'd like to briefly address several points. The first is the Jackson decision. The government cited it and relied on it heavily. The district court did, too. In that case, the defense was actually allowed to elicit that the government declined to prosecute or dismiss prostitution charges against the minor victims. And that's essentially exactly what Gibbon was attempting to do here, but the district court prohibited him. Second, there was an argument that the motive argument was not presented to the district court or that this is somehow new on appeal. I heavily dispute that. In the day four sealed transcript, defense counsel states, we would submit that this evidence fortweighing goes to motive and the fortweighing goes to complete the picture. There was ample discussion of this on day one of the trial before jury selection, volume four, pages 100 through 130, where Christine testified, the sealed excerpt on day four, Shakala's testimony, and a sealed excerpt that happened there. There was substantial discussion of this issue at trial. Moving on to some of the things that we talked about in sentencing, I think the issue of whether the conduct falls within the heartland of the cases kind of ties into the disparity issue. And they're really all one issue. We didn't raise it as a standalone issue here, but it all goes back to 3553A6 and the sentencing disparity argument. We did not ask for a departure. The government has attempted to cast the argument as a request for a downward departure based on race, which is clearly prohibited by the guidelines, and that was never the argument. The argument was that black pimps are prosecuted and sentenced, because you can't have a sentencing without a prosecution, in a way different from other defendants. And it specifically mentions white businesses and Asian businesses that are often punished with a civil forfeiture or a fine for essentially the same conduct that Mr. Gibbon received 235 months of imprisonment for. So that's the argument there. Turning back to Davis, I really think the particular attack is what we have to look at here versus the general attack. The general attack is, is this person less truthful than the ordinary citizen? And that does not carry the same constitutional protections as the particular attack, which goes to bias and motive. And again, the bias and motive of Christine and Shekayla to testify against him is that they get to blame him for the conduct and excuse themselves, just like the witness in Davis blamed the defendant for the robbery of the polar bar and excused himself. And so really those facts are really totally indistinguishable as far as the importance and the application of the particular attack that's constitutionally protected. So one question on the Trafficking Victims Protection Act. You don't dispute that that act is used routinely for domestic trafficking. Is that correct? I don't dispute that that's the way it's applied, but certainly I think the congressional history as discussed in the article and elsewhere would show that that's not really what it was originally intended to do. If there's no further questions, I thank you very much. Mr. Rossman, I see you're appointed under the Criminal Justice Act, and I know you do that as a service to the court, so the court is very appreciative. Thank you. Thank you, Your Honor. The case is submitted. The clerk may call the next case.